1  DIETER C. DAMMEIER, SBN 188789
   dieter@policeattorney.com
2  MICHAEL A. MCGILL, SBN 231613
   mcgill@policeattorney.com
3  MICHAEL A. MORGUESS, SBN 192838
   morguess@policeattorney.com
4  **LACKIE, DAMMEIER & MCGILL APC**
   367 North Second Avenue
5  Upland, CA  91786
   Telephone: (909) 985-4003
6  Facsimile:  (909) 985-3299

7  Attorneys for Plaintiff
   REHAN NAZIR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REHAN NAZIR,<br><br>  Plaintiff,<br><br>  vs.<br><br>CITY OF TORRANCE, a municipal corporation; JOHN J. NEU, individually and as Chief of Police of the City of Torrance Police Department; DOES 1 THROUGH 30,<br><br>  Defendants. | Case No. 12 CV 03310 JAK (ARGx)<br><br>**AMENDED FEDERAL COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND MANDATE** |

[LEFT BLANK INTENTIONALLY]

1

AMENDED FEDERAL COMPLAINT

1. Plaintiff REHAN NAZIR (hereinafter "PLAINTIFF" or "NAZIR") is an individual and resident of Los Angeles County. At all relevant times unless otherwise mentioned herein, Nazir was employed by Defendant City of Torrance in the capacity of police officer with the Torrance Police Department. NAZIR is a permanent police officer for the CITY OF TORRANCE and as such has a constitutionally cognizable property interest in his position. At all relevant times unless otherwise mentioned herein, NAZIR was a peace officer as defined by California Penal Code Section 830.1, and therefore is and was entitled to the protections of the Public Safety Officers Procedural Bill of Rights Act (Cal. Govt. Code Section 3300 et seq.), and further he completed the probationary period required by his employing agency, and thus could only be terminated for cause and therefore has a constitutionally cognizable property interest in his employment.

2. Defendant CITY OF TORRANCE ("CITY") is a duly constituted municipal corporation operating under the laws of the State of California, wholly situated in the County of Los Angeles. Torrance Police Department (hereinafter "Department") is an operating department of CITY. CITY is a public agency employer for purposes of the Public Safety Officers Procedural Bill of Rights Act (Cal. Govt. Code Section 3300 et seq.).

3. Defendant JOHN J. NEU ("NEU") is, and at all times herein mentioned was, the Chief of Police of the CITY Police Department. NEU is sued individually in his capacity as the Chief of Police. In doing the things alleged herein, NEU acted under color of state law, within the course and scope of his employment, and as an official policy-maker for the City. As a head of the Police Department, NEU is, and at all times herein mentioned was, vested with policy-making authority over actions such as the ones at issue in this complaint.

4. Plaintiff is ignorant of the true names and capacities of Defendants and DOES 1 through 30 sued herein, and therefore sues these Defendants by

fictitious names. Plaintiff is informed and believes, and thereupon alleges, that each of these fictitiously named Defendants is legally responsible, intentionally, negligently, or in some other actionable manner, for the events and occurrences described herein and thereby legally caused the injuries, damages, violations and deprivation of rights alleged herein. Plaintiff will amend this complaint and seek the true names and capacities of said fictitiously named Defendants when they have been ascertained.

5.    At all times relevant herein, Defendants and DOES 1 through 30, and each of them, were acting under color of law, to wit, under the color of statutes, ordinances, regulations, policies, customs, practices, and usages of Defendants as appropriate and the State of California. Defendants and said DOE Defendants were acting within the course and scope of their employment with CITY, and the wrongful acts hereinafter described flow from their exercise of said authority. In some circumstances, each Defendant was also acting as an employee, agent and representative of each and every Defendant herein, and in doing the acts herein alleged, was acting within the permission, consent, ratification, and authority of their co-Defendants.

6.    On or about April 14, 2007, NAZIR and another CITY police officer were working a patrol shift for CITY. During that shift, NAZIR and the other police officer learned that a robbery had occurred at a local convenience store, and learned the suspect's description.

7.    Subsequent to learning of the robbery and suspect's description, and during the same patrol shift, NAZIR and the other police officer used a confidential informant to arrange a narcotics purchase from a suspected narcotics dealer.

8.    Subsequent to arranging the narcotics transaction, and during the same patrol shift, NAZIR and the other police officer observed someone matching the

description of the aforementioned robbery suspect in the vicinity of the same local convenience store that had been robbed, and who acted suspiciously.

9. The person NAZIR and the other police officer observed also generally matched the description of the person from whom the confidential informant arranged to purchase narcotics; however, NAZIR and the other police officer had not previously worked with this particular confidential informant and given the tenuous nature of developing and using such contacts, did not know if the confidential informant or the information provided by the informant were trustworthy, reliable or accurate, and therefore could not ascertain whether the person then and there observed was the suspect from the earlier reported robbery or the person from whom the confidential informant had arranged to purchase narcotics, or neither.

10. NAZIR and the other police officer decided to make contact with the observed person to ascertain whether he was the robbery suspect or the narcotics dealer.

11. Upon initiating a consensual encounter with the observed person, NAZIR and the other police officer determined he was the narcotics dealer from whom the confidential informant had arranged to purchase narcotics and placed him under arrest.

12. NAZIR and the other police officer reported the arrest, and a Sergeant from the CITY police department arrived to provide assistance at the scene of the arrest. NAZIR and the other police officer briefed the Sergeant on the details of the arrest, including the use of the confidential informant.

13. NAZIR prepared two Probable Cause Declarations ("PCD") detailing the probable cause supporting the contact and arrest, and an Arrest Report. Pursuant to training he received by CITY, and consistent with law enforcement professional standards and customs, and case law, he omitted information

4

concerning use of the confidential informant because he had independent probable cause to make contact with, detain, and arrest the observed person. The PCD and Arrest Report were reviewed with approval by the other police officer partnered with NAZIR and the Watch Commander, who is a lieutenant. At no time has any person or entity disputed whether probable cause existed to make the contact or arrest.

14. Shortly thereafter, in or about the middle of April 2007, the District Attorney's Office filed criminal charges against the person arrested (the "Arrestee") by NAZIR and his partner; contemporaneous with the filing of said criminal charges, the District Attorney's Office was informed of the use of the confidential informant; nevertheless, the District Attorney's Office proceeded with the prosecution of the Arrestee.

15. In or about October 2008, in the course of a federal prosecution against the Arrestee, his attorney learned of the use of a confidential informant and moved to dismiss the case filed in state court against him by the District Attorney's Office.

16. In or about October 2008, the District Attorney's Office dismissed the state case against Arrestee.

17. On or about December 2008, CITY police department initiated investigations of several of CITY's police officers who were involved in the arrest of Arrestee and concerning the arrest; however, although fully aware of the omission of the use of the confidential informant from the PCD and Arrest Report, Plaintiff is informed and believes the CITY also investigated NAZIR or sought to discipline him at that time; and none of the other investigated police officers were disciplined.

18. On February 2, 2009, the District Attorney's Office, through its Bureau of Prosecution Support Operations, Brady Compliance Unit, notified

5

AMENDED FEDERAL COMPLAINT

NAZIR that the Brady Compliance Unit had conducted an investigation and determined that the PCD and Arrest report concerning Arrestee contained false information because it failed to contain information concerning use of the confidential informant; that it considered its findings to constitute "Brady material," and the notice indicated that as a result thereof, NAZIR was being placed in the District Attorney's Office's "Brady Alert System."

19.   Plaintiff is informed and believes, and upon such information and belief alleges that "Brady material" refers to a prosecuting authority's discovery obligations pursuant to the United States Supreme Court case of *Brady v. Maryland* (1963) 373 U.S. 83 ("*Brady*"). Generally, *Brady* requires prosecutors to disclose to the defense evidence favorable to a defendant which is either exculpatory or impeaching and is material to either guilt or punishment; suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment.

20.   Plaintiff is informed and believes, and upon such information and belief, alleges that pursuant to Special Directive 02-08 promulgated by County of Los Angeles and District Attorney's Office the County and District Attorney's Office have created a "Brady Alert System" which is operated and maintained by the Brady Compliance Division and/or Brady Compliance Unit, which serves as a central repository for Brady material and coordinates and makes available to deputy district attorneys Brady material on peace officers, including police officers such as NAZIR, and governmentally employed expert witnesses.

21.   Plaintiff is informed and believes, and upon such information and belief, alleges that every deputy district attorney of the District Attorney's Office can access the Brady Alert System to determine whether information about a particular witness exists.

22. There is no obligation of law which requires the District Attorney's Office to maintain the Brady Alert System; its creation is a matter of convenience.

23. In its February 2, 2009, notice to NAZIR, the Brady Compliance Unit informed NAZIR that he was permitted to file written objections and submit additional written information to Senior Special Assistant Lawrence Mason of the District Attorney's Office who would make the final decision as to whether NAZIR was to be placed in the Brady Alert System. The notice concluded that if placed in the Brady Alert System, NAZIR's employer would be so notified. The procedures described in this paragraph were taken pursuant to Special Directive 02-08.

24. On or about April 23, 2010, NAZIR submitted his written objections and further information in an attempt to have his name removed from the Brady Alert System and to dispute the initial findings by County of Los Angeles and District Attorney's Office of dishonesty and conduct involving moral turpitude. NAZIR was not permitted to appear before Lawrence Mason, present live testimony, or cross-examine witnesses, or able to review all of the materials and information upon which the District Attorney's Office relied; nor was the District Attorney's Office required to carry any burden or present a case-in-chief in support of placement into the Brady Alert System.

25. On June 3, 2010, Senior Special Assistant Mason rendered the final administrative decision on behalf of the District Attorney's Office and determined that there is substantial evidence that Brady material exists and that such information be placed into the District Attorney's Brady Alert system. More specifically, Mason determined that NAZIR was the primary subject of the internal investigation by CITY concerning Arrest of Arrestee; that NAZIR falsified the Arrest Report and PCDs; that his conduct involved moral turpitude; and that Brady

material exists and that such information should be placed into the County and District Attorney's Office's Brady Alert System.

26. On or about June 10, 2010, the Brady Compliance Unit of the District Attorney's Office notified Defendants CITY (NAZIR's employer) and Chief of Police NEU of the final administrative decision by MASON, who the District Attorney's Office identified as a neutral third party, of placing NAZIR in the Brady Alert System.

27. On or about August 16, 2010, CITY, through Defendant NEU, issued a notice to NAZIR of CITY's intent to terminate NAZIR based on a finding that NAZIR made false statements in two PCDs and the Arrest Report prepared in connection with arrest of the Arrestee, and additionally purported to base the termination on the determination to place NAZIR's name in the Brady Alert System, and additionally purported to base the termination on the alleged prospect that the District Attorney's Office may not file cases in which NAZIR is involved. On September 9, 2010, CITY terminated NAZIR purportedly based on these same reasons. Plaintiff is informed and believes, and upon such information and belief, alleges that such purported reasons on placement in the Brady Alert System and the alleged District Attorney's Office purported statement that it might not file cases in which Nazir is involved, were pretextual.

28. Plaintiff is informed and believes, and upon such information and belief, alleges that based upon the City's purported reasons for his termination, placement in the Brady Alert System could serve to effectively blacklist NAZIR from further employment as a peace officer in that no law enforcement agency will hire him so long as he remains on the District Attorney's Office Brady Alert System list. However, Plaintiff is informed and believes, and based upon such information and belief, alleges that other peace officers who have been placed into the Brady Alert System or other similar systems, are still employed by other police

agencies, as well as the City of Torrance, nor has any other officer even been terminated, presently or in the past, solely because they were in such Brady or other system.

## FIRST CAUSE OF ACTION

*California Government Code §§ 3304(d); 3309.5 –*

*As Against Defendants CITY and NEU*

29. Plaintiff hereby incorporates each and every preceding paragraph as though fully set forth herein.

30. Plaintiff is a peace officer as that term is defined in California Government Code Section 3301 and is therefore entitled to the rights and protections of the Public Safety Officers Procedural Bill of Rights Act ("Act") (Cal. Govt. Code § 3300 et seq.).

31. Although as early as April 2007, and no later than October 2008, CITY and NEU were aware of all facts and circumstances of the PCDs and Arrest Report concerning the arrest of Arrestee, as well as omission by NAZIR of the information concerning the confidential informant from the PCDs and Arrest Report, it did not investigate and notify NAZIR of the intent to terminate or otherwise discipline him based upon said conduct until June 2010.

32. California Government Code Section 3304(d) provides that, with certain exceptions not applicable herein, no punitive action shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct; in the event the public agency determines that discipline may be taken, it shall complete its investigation and notify the police officer of its proposed disciplinary action within that year.

33. Defendants CITY and NEU were aware of the acts constituting the misconduct for which they now propose NAZIR's termination, more than one year prior to proposing NAZIR's termination, and therefore the proposed termination violates California Government Code Section 3304(a).

34. California Government Code Section 3309.5(c) authorizes this court to have initial jurisdiction over this action without requiring Plaintiff to first exhaust any administrative remedies.

35. Plaintiff seeks extraordinary relief, in the form of this Court's writ of mandate, or injunctive relief, pursuant to California Government Code Section 3309.5(d)(1), enjoining CITY and NEU from disciplining Plaintiff based on the acts, omissions, or other allegations of misconduct concern the arrest of Arrestee, the PCDs and Arrest Report, and seeks any incidental back pay and benefits as a result of the issuance of the writ of mandate.

## SECOND CAUSE OF ACTION

### *Negligent Training and Supervision – As Against CITY and NEU*

36. Plaintiff hereby realleges and incorporates by reference each and every preceding allegation as though fully set forth herein.

37. The basis for Plaintiff's termination is purported conduct that he was trained, educated and told to perform. More specifically, from the start of his career at CITY, Plaintiff was trained, educated and told to protect the identity of a confidential informant by omitting any reference of the informant in any given arrest and/or declaration.

38. Plaintiff was specifically trained, educated and told to always indicate a different basis for probable cause to make contact with a suspect. Plaintiff was taught and trained before filing a major narcotics case with the District Attorney's Office to inform the District Attorney's Office of the involvement of such an

informant. If the Plaintiff was to testify in any case where an informant was utilized, the Plaintiff would then have the right to have an in-camera hearing with the prosecuting attorney and the judge to let the judge know in regards to the informant, which is also covered under California Evidence Code Section 1040-1042. This was taught to Plaintiff by his training officers, superiors, other officers, and NEU. In addition, Plaintiff was provided on-the-job training to this effect.

39. On August 16, 2010, Plaintiff was notified of the CITY's intent to terminate his employment with the CITY for performing his job in the manner in which he was trained, educated and taught to do so.

40. Defendants negligently trained Plaintiff, and negligently retained individuals who negligently trained Plaintiff in a manner that has caused him significant damages.

41. On August 25, 2010, Plaintiff filed a claim concerning the above with the CITY pursuant to the Government Claims Act (Cal. Govt. Code Section 905 et seq.).

42. On September 9, 2010, Plaintiff was terminated for the reasons stated in the August 16, 2010, notice of intent to terminate.

43. On October 1, 2010, CITY denied Plaintiff's claim for unstated reasons.

44. On November 24, 2010, Plaintiff filed a complaint in the Central District of California for the United States District Court containing the herein allegations, causes of action, and prayer for relief; the herein causes of action were stayed pending resolution of other causes of action, and subsequently, on October 6, 2011, the District Court issued an order declining to exercise supplemental jurisdiction over the herein claims, said order to be effective 30 days therefrom; therefore, this complaint is timely.

**AMENDED FEDERAL COMPLAINT**

45. Plaintiff has exhausted all available administrative remedies concerning this claim.

## THIRD CAUSE OF ACTION

### *Against All Defendants*

### *Violation of Equal Protection under the United States and California Constitutions*

46. Plaintiff realleges each and every preceding paragraph as though fully set forth herein.

47. There are peace officers employed by the City of Torrance who are in the Brady Alert System who are terminated by the City solely because of such status (such as Plaintiff), and there are peace officers who have so called Brady material in their personnel files, and who otherwise qualify to be placed into the Brady Alert System, but who have not been placed in the Brady Alert System, and said Brady material would still need to be disclosed to a defendant in a criminal case; however, the peace officers who do have Brady material in their personnel files, and are qualified for placement in the Brady Alert System (but are not actually placed into the Brady Alert System by the District Attorney) are not terminated due to the same qualifying Brady material.

48. Because other peace officers from other police agencies, as well as from the City of Torrance, who have Brady material in their personnel files, otherwise qualify for placement into the Brady Alert System, but have not been placed into said system by the District Attorney, have not been terminated solely as a result of said qualifying Brady material, either presently or at any time in the past, as alleged upon information and belief above, then if indeed the City of Torrance and Neu's reasons for terminating Plaintiff, as purported by Defendants, placement into the Brady Alert System, have violated the Equal Protection Clauses

of the United States and California Constitutions by treating Plaintiff and others similarly situated (those in the Brady Alert System) differently from similarly situated persons (peace officers with qualifying Brady material who simply have not been placed into the Brady Alert System). This has resulted in a resulting loss of income and benefits, pain and suffering, and emotional distress.

49. The acts and omissions of Defendants, and each of them, were done by Defendants under color of state law in their capacity as a municipality organized under state law, and as policy making authorities to which Defendant City delegated its governing powers in the subject matter areas in which these policies were promulgated or decisions taken or customs and practices followed.

50. The acts and omissions described above were taken by Defendant CITY's official policy makers as members charged with such responsibility. It was or should have been plainly obvious to any reasonable policy making official of Defendant CITY that the acts and omissions of Defendants as alleged herein, taken singly or in conjunction, directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights. In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiff's rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights. General, special, and exemplary damages are sought according to proof. Punitive damages are sought against the individual defendants, according to proof.

//
//
//
//
//

# PRAYER

WHEREFORE, Plaintiff prays:

1. For general, special, exemplary and punitive damages according to proof on the Second and Third Causes of Action;

2. For an injunction and/or writ of mandate enjoining Defendants CITY and NEU from disciplining for the acts, omissions, or other allegations of misconduct described in the August 16, 2010, disciplinary notice issued by NEU and September 9, 2010, disciplinary notice issued by CITY and for incidental backpay and benefits of employment;

3. For costs of suit;

4. For attorneys fees under California Government Code Sections 800, 1021.5 and 3309.5; 42 U.S.C. Section 1986, and as otherwise permitted by law;

5. For other appropriate relief.

Dated: May 3, 2012

Respectfully Submitted,

LACKIE, DAMMEIER & MCGILL APC

_____
Michael A. Morguess
Attorneys for Plaintiff,
REHAN NAZIR

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial under F.R. Civ. P., Rule 38 and C.D. Cal. Rule 3-6.(a)

Dated: May 3, 2012

Respectfully Submitted,

LACKIE, DAMMEIER & MCGILL APC

Michael A. Morguess
Attorneys for Plaintiff,
REHAN NAZIR

# PROOF OF SERVICE

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 367 North Second Ave., Upland, California 91786.

On **May 5, 2012,** I served the following document described as **AMENDED FEDERAL COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND MANDATE** on the interested parties in this action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope addressed as follows:

| |
|---|
| *Attorneys for Defendants, City of Torrance and John J. Neu* <br> Mark H. Meyerhoff, Esq. <br> mmeyerhoff@lcwlegal.com <br> Joung H. Yim, Esq. <br> jyim@lcwlegal.com <br> LIEBERT CASSIDY WHITMORE <br> 6033 W. Century Blvd., Ste 500 <br> Los Angeles, CA 90045 <br> Tel: (310) 981-2000 <br> Fax: (310) 337-0837 |

[X]    I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Upland, California.

[ ]    By Personal Service, I caused such envelope to be delivered by hand to the above addressee(s).

[ ]    By facsimile machine, I caused the above-referenced document(s) to be transmitted to the above-named persons(s) at the following telecopy number:

[ ]    By Overnight Courier, I caused the above referenced document(s) to be delivered by an overnight courier (UPS) for delivery to the above addressee(s).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed May 4, 2012 at Upland, California.

*[signature]*

Muriel Mateer